2020 IL App (1st) 182619-U
Order filed October 9, 2020

FIRST DISTRICT
FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 14290 |
| | ) | |
| MALCOLM RUSSELL, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Justices Hoffman and Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirmed defendant's conviction for being an armed habitual criminal, finding that the circuit court adequately complied with Rule 431(b) when questioning the venire and that his counsel committed no ineffective assistance.

¶ 2    A jury convicted defendant, Malcolm Russell, of being an armed habitual criminal, and the

circuit court sentenced him to 13 years in prison. On appeal, defendant contends that: (1) during

*voir dire*, the court violated Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) by failing to

question the potential jurors regarding their understanding and acceptance that he was not required

to offer any evidence; (2) defense counsel committed ineffective assistance; and (3) the court erred by failing to overrule an objection to a leading question to one of the officers. We affirm[1].

¶ 3     At trial, Officer Maureen Webb testified that at about 2 a.m. on September 4, 2016, she and her partner, Officer Christopher Williams, heard over the police radio that there was a battery in progress at the building located at 8117 South Colfax. They went to that location, where Officer Webb saw a woman outside the vestibule of the building. The woman was "visibly shaken" and had been crying. Defendant was standing nearby on the sidewalk. He matched the description of the offender. Other officers were also at the scene.

¶ 4     Officer Webb and Officer Williams approached defendant and asked to see his hands so as to check for weapons. Defendant showed them his hands and then he immediately ran away. The officers ran after him. During the chase, Officer Webb saw an "object fly from the right side of his waistband and fall to the ground." Officer Webb immediately recovered the object and saw that it was a loaded, semiautomatic handgun. Officer Williams and Officer Rice subsequently captured defendant and he was transported to the police station along with the handgun, which was inventoried pursuant to Chicago police procedures. The handgun was produced at trial and identified by Officer Webb and Officer Williams.

¶ 5     Officer Williams testified that at about 2 a.m. he and Officer Webb heard over the police radio about a battery in progress at 81st and Colfax. They arrived at the scene and saw defendant standing on the sidewalk near 8121 South Colfax. A female was outside the vestibule of the apartment building at 8117 South Colfax. She was crying. Other officers were also at the scene.

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

¶ 6    Officer Williams approached defendant while Officer Webb tended to the woman. Officer Williams asked defendant if everything was okay. Defendant said that he was "fine." Officer Williams approached defendant to perform a pat-down. Defendant ran away and Officer Williams and two other officers gave chase. During the chase, Officer Williams saw "something" fall from defendant's waistband. The officers caught defendant and handcuffed him. Officer Williams then spoke with Officer Webb, who had recovered the object that had fallen from defendant's waistband. Officer Williams saw that the object was a loaded, .9 millimeter handgun. The handgun was taken to the police station and inventoried.

¶ 7    Following Officer Williams's testimony, the parties entered into the following stipulation:

> "[ASSISTANT STATE'S ATTORNEY]: Now come the People of the State of Illinois by their attorney, Kimberly M. Foxx, State's Attorney of Cook County, through her assistants Amari Dawson and Jillian Anselmo, and the defendant Malcolm Russell, AKA Malcolm Howell through his representatives Shady Yassin and Robert Breslin, it is hereby stipulated by and between the parties that the defendant, Malcolm Russell AKA Michael Howell was previously convicted of two prior qualifying felony offenses."
>
> [THE COURT]: Is that so stipulated Mr. Yassin?
>
> [DEFENSE COUNSEL]: So stipulated."

¶ 8    In his case-in-chief, defendant called William Patterson, who testified that in the early morning on September 4, 2016, he and a friend drove over to defendant's girlfriend's house at 82nd and Colfax to pick him up so that they could hang out. When they arrived at about 2 a.m., Patterson saw defendant on the front stoop of 8117 South Colfax, talking to his girlfriend, whose name was Diamond. They were having a "normal conversation." Patterson remained in his car while defendant and Diamond talked. Patterson could not hear what they were saying.

¶ 9    Several police cars pulled up and five or six officers got out. Patterson heard one of the officers ask defendant and Diamond if everything was okay. Diamond said everything was fine. One of the officers then tackled defendant in front of the building. Defendant had not been running away at the time he was tackled. Nothing fell from defendant's waistband, and the officers did not pick anything up from the ground. The officers handcuffed defendant, placed him in a squad car, and drove him away.

¶ 10    Following all the evidence, defendant was convicted of being an armed habitual criminal and sentenced to 13 years' imprisonment.

¶ 11    On appeal, defendant first contends that the circuit court erred by failing to properly instruct and question the prospective jurors in accordance with Rule 431(b). Defendant forfeited review by failing to make a contemporaneous objection. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Even if the issue had not been forfeited, we would find no reversible error.

¶ 12    Rule 431(b), which codified our supreme court's ruling in *People v. Zehr*, 103 Ill. 2d 472 (1984), provides:

> "The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's decision not to testify when the defendant objects." Ill. S.Ct. R. 431(b)(eff. July 1, 2012).

¶ 13    The circuit court's compliance with Rule 431(b) is reviewed *de novo*. *People v. Belknap*, 2014 IL 117094, ¶ 41.

¶ 14    Defendant argues that the court failed to properly instruct and question the venire so as to ascertain its understanding and acceptance of the third Rule 431(b) principle, namely, that he is not required to offer any evidence on his own behalf. Defendant does not argue that the court erred with regard to the instructions and questions regarding the other principles.

¶ 15    The record shows that the court instructed and questioned the prospective jurors in pertinent part as follows:

> "Thirdly, the defendant *** is not required to prove his innocence or call witnesses on his own behalf. The defendant is not required to prove his innocence or call witnesses on his own behalf. Anyone out there who's a possible juror who does not understand and accept that instruction? And, again, as for all the others, raise your hand now. And, again, no hands, no response."

¶ 16    Defendant contends that the court's instruction to the prospective jurors that he need not prove his innocence or call witnesses on his own behalf, and its question as to whether they understood and accepted that instruction, was not sufficient to ascertain that they understood and accepted that he was not required to offer *any* evidence on his own behalf. According to defendant, the prospective jurors could have misconstrued the court as requiring him to present evidence other than witnesses, such as physical or documentary evidence.

¶ 17    Defendant's argument fails, as this court has repeatedly held that a trial court's instruction to the prospective jurors that defendant is not required to prove his innocence, and its question as to whether they understood and accepted that instruction, is sufficient to satisfy the third Rule

431(b) principle. See *People v. Kidd*, 2014 IL App (1st) 112854; *People v. Chester*, 409 Ill. App. 3d 442 (2011); *People v. Atherton*, 406 Ill. App. 3d 598 (2010).

¶ 18    The cases relied on by defendant, *People v. Shumpert*, 126 Ill. 2d 344 (1989) and *People v. Jackson*, 2016 IL App (1st) 133741, are inapposite. *Shumpert* did not even involve Rule 431(b) and therefore is of no help to defendant. In *Jackson*, we held that the trial court failed to comply with Rule 431(b) as it did not instruct the venire about the fourth principle, that defendant's failure to testify cannot be held against him, nor did it adequately instruct on the second principle where it did not mention the reasonable doubt standard during the question-and-answer process. *Jackson*, 2016 IL App (1st) 133741, ¶¶ 43, 46. We also held that the trial court failed to inquire as to whether the venire understood the first principle, the presumption of innocence, when it asked the prospective jurors whether they "believe[d] that they could follow" that principle. *Id.* ¶ 44. We noted that asking the prospective jurors whether they "could follow" a Rule 431(b) principle was the rough equivalent of asking them if they *accept* that principle, but it is not the equivalent of asking them if they *understand* that principle. *Id.* In contrast to *Jackson*, the court here instructed the venire about all of the Rule 431(b) principles, including the third principle at issue, and also specifically questioned the venire as to whether it understood and accepted those principles. Accordingly, the court adequately complied with Rule 431(b).

¶ 19    Next, defendant contends that his counsel provided ineffective assistance by failing to object to certain improper remarks made by the prosecutor during opening statement. To prevail on his claim of ineffective assistance, defendant must show that his trial counsel's performance was objectively unreasonable and that he was prejudiced thereby such that, but for counsel's unprofessional errors, the result of the trial would have been different. *People v. Gunn*, 2020 IL App (1st) 170542, ¶¶ 93-96. Defendant must overcome the strong presumption that the challenged

action may have been the product of sound trial strategy. *Id.* ¶ 94. Generally, matters of trial strategy are immune from claims of ineffective assistance of counsel. *Id.* Our review is *de novo*. *Id.* ¶ 91.

¶ 20 Opening statements are meant to inform the jury of what the parties intend to prove at trial. *Klingelhoets v. Charlton-Perrin*, 2013 IL App (1st) 112412, ¶ 29. While no comment should be made therein that counsel cannot or will not prove, opening statement may include a discussion of expected evidence and reasonable inferences to be drawn therefrom. *Id.*

¶ 21 Defendant argues that his trial counsel was ineffective for failing to object to the following remarks by the prosecutor during opening statement:

"[On] the night of September 4, 2016, at approximately 2 a.m. in the morning in the 8100 South block of Colfax in this county. On that day at that location and at that time police received a dispatch that there was a battery in progress. They respond to that location in less than a minute. When they get to the location, they hear a distraught female inside the vestibule of a building. She's sobbing so loudly that they can hear her while that door is closed on that building. They then see a male. The male happens to be this man, the defendant. He's standing near that building. Immediately, there is a female officer who runs to the distraught female. She tries to ensure that she's safe. There's a male officer who is with her. He approaches the defendant. As he approaches the defendant and begins to speak with him, the defendant takes off running.

Stop. The police yell. The defendant does not stop. As he runs a few steps down the block, drop, there's a gun, a firearm that drops from his waistband. The police notice this and now they're close to him. They're trailing behind. The defendant tripped. It's at that time they were able to roll out the handcuffs and place him into custody."

¶ 22    Defendant argues that the prosecutor's comments during opening statement regarding how the police responded to a call of a battery in progress and saw a distraught female clearly implied that he had battered his girlfriend, priming the jury to see him as a domestic abuser. Defendant contends that the prosecutor's comments were improper because they had no bearing on his guilt for armed habitual criminal and could only arouse the jurors' hostility toward him and that there was no sound strategic reason for counsel's failure to object to them.

¶ 23    Defendant's argument is unavailing. The prosecutor's comments during opening statement accurately apprised the jury of what the State intended to prove at trial to show the course of the police investigation and, in fact, did prove. Evidence regarding the police investigation was relevant and admissible. See *People v. Simms*, 143 Ill. 2d 154, 174 (1991) ("a police officer may recount the steps taken in the investigation of a crime, and may describe the events leading up to the defendant's arrest, where such testimony is necessary and important to fully explain the State's case to the trier of fact"). As the prosecutor's comments accurately recounted the evidence that the State intended to prove at trial, and where such evidence was relevant and admissible to recount the course of the police investigation, they were a proper subject of opening statements and therefore defense counsel committed no ineffective assistance by failing to object to them. *Klingelhoets*, 2013 IL App (1st) 112412, ¶ 29. In so holding, we note that when discussing the course of the police investigation during opening statement, the prosecutor never stated anything beyond what the evidence would show, *i.e.*, he did not state that defendant committed a battery or even if a battery took place. Accordingly, there was no cause for objection by defense counsel.

¶ 24    The only portion of the prosecutor's comments during opening statement that was not provable at trial was the remark that Diamond was inside the vestibule of the building and that the officers heard her sobbing through the closed door. The evidence at trial showed that Diamond

was actually outside the vestibule and crying when the officers arrived at the scene. Defendant argues that his counsel should have known that the officers encountered Diamond while she was outside the vestibule, as Officer Webb's police report indicated as such, and therefore that counsel should have objected to the prosecutor's comment during opening statement that she was inside the vestibule and could be heard sobbing through the closed door when the officers arrived. We fail to see how the result of the trial would have been different had counsel so objected, as defendant's armed habitual criminal conviction did not turn on whether or not Diamond was inside or outside the vestibule when the officers arrived at the scene. Accordingly, defendant's claim of ineffective assistance fails.

¶ 25     Next, defendant contends that the court erred by overruling his objection to the following testimony of Officer Webb on redirect examination:

> "Q. When you spoke [to Diamond] was she sobbing?
>
> A. Yes."

¶ 26     Defendant contends that the State's question of Officer Webb was a leading question that improperly suggested that defendant had harmed his girlfriend Diamond.

¶ 27     A question that suggests the answer to the person being interrogated, especially a question that may be answered by a mere "yes" or "no" (such as the one at issue here) is considered leading. *People v. Miles*, 351 Ill. App. 3d 857, 866 (2004). Generally, it is improper for counsel to ask a leading question of his own witness. *People v. Bunning*, 298 Ill. App. 3d 725, 732 (1998). In the present case, though, any error in the leading question asked of Officer Webb was harmless, where her testimony that she saw that Diamond was sobbing was cumulative to the following testimony of Officer Williams during his direct examination:

> "Q. And you said you saw another civilian on [the] scene, is that right?

A. Yes, ma'am.

Q. And you said that was a female?

A. Yes.

Q. Where was that female located?

A. The female was located at like 8117. She was *** crying.

Q. What did you do when you arrived on scene?

A. I immediately noticed the young lady crying. The officers were standing right there. I even pointed her out to the officers, to let them know *** that she [was] crying. That was the first thing that I noticed."

¶ 28    Given that Officer Williams's testimony regarding his observation that Diamond was crying was not the result of any leading questions, and was properly admitted without any objections, Officer Webb's cumulative testimony that she, too, saw that Diamond was crying constitutes harmless error even if it was result of a leading question. See *People v. Wilson*, 2012 IL App (1st) 101038, ¶ 56 (error in the admission of evidence that is cumulative to properly admitted evidence is harmless).

¶ 29    Defendant contends that the State asked Officer Webb two other leading questions on redirect examination regarding her seeing Diamond crying, and that defense counsel was ineffective for failing to object to them or raise the issue in his posttrial motion. Officer Webb testified:

"Q. Officer Webb, did you hear any crying when you [arrived] on the scene?

A. [Diamond] was definitely shaken and when she was talking to you, you could definitely tell she had been crying, yes.

Q. Did you see any tears on her face?

A. When I walked up to her \*\*\* after we arrested the defendant, yes, there were

tears on her face."

¶ 30 As this testimony was also cumulative to the properly admitted testimony of Officer Williams and therefore harmless, defendant's claim that his counsel was ineffective for failing to object thereto or raise the issue in his posttrial motion fails for lack of prejudice.

¶ 31 Next, defendant contends that his counsel was ineffective for failing to object when the State twice referenced his alias while reading the stipulation that he had been convicted of prior qualifying felony offenses. Defendant argues that the stipulation could have been read to the jury without the references to his alias, and that the inclusion of the alias improperly suggested to the jury that he has a reputation for unsavory activity.

¶ 32 Counsel committed no ineffective assistance by failing to object to the State's references to his alias. *People v. Howard*, 147 Ill. 2d 103 (1991), is informative. In *Howard*, defense counsel failed to object when the trial judge twice referenced defendant's alias when reading the indictment to the prospective jurors. *Id.* at 141. Defense counsel also failed to object to the prosecutor's two references to defendant's alias during opening statement or to the prosecutor's reference to the alias when questioning a detective and an assistant State's Attorney at trial. *Id.* Our supreme court found no reversible error where "the references to the defendant's use of another name were infrequent; there was no attempt made to argue or present the information in a negative manner; indeed, at no time was the term 'alias' even used." *Id.* at 142.

¶ 33 In the present case, the references to defendant's use of another name were even more infrequent than in *Howard*, as the alias was only mentioned twice during the reading of the stipulation. As in *Howard*, no attempt was made to argue or present defendant's alias in a negative

manner, and at no time was the term "alias" even used. Accordingly, defendant was not prejudiced thereby, and in the absence of prejudice, defendant's claim of ineffective assistance fails.

¶ 34    Defendant argues that the cumulative effect of the various alleged errors requires that he be granted a new trial. There is no reversible error on any individual issue and no cumulative error.

¶ 35    For all the foregoing reasons, we affirm the circuit court.

¶ 36    Affirmed.